IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-cr-288 |
| PATRICK McGOVERN-ALLEN | : | |

### GOVERNMENT'S UNOPPOSED MOTION FOR A PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16(d)(1)

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney, and Anthony J. Carissimi, Assistant United States Attorney, hereby respectfully requests that the Court enter a protective order, pursuant to Federal Rule of Criminal Procedure 16(d)(1), providing that the defense may use investigative materials produced in discovery only for preparation for trial and at trial and any sentencing hearings, and may not disclose the information to third parties except as required to prepare for trial or for use at trial and any sentencing hearings. In support of this motion, the government states:

1. On September 2, 2022, a grand jury sitting in the Eastern District of Pennsylvania returned a two-count indictment against defendant Patrick McGovern-Allen charging him with two counts of stalking in violation of 18 U.S.C. § 2261A. The charges arose from the defendant's participation in the firebombing of a house and the shooting of another house.

2. These criminal incidents originated from an online community that commonly engages in doxing, swatting, and other retaliatory acts of violence using the Discord application. It is common for Discord users within this community to users to post or solicit "jobs." These jobs can include offers to shoot at people, start fires, or other violent acts in exchange for payment. The payment is often made by electronic transfers, including cryptocurrency. It is

common for individuals' personal information to find its way on platforms like Discord—a process known as "doxing"—and to be used to target them. In the past, victims and even law enforcement have been targeted for online retribution by this group.

3. Members of this online community also regularly engage in the electronic identity theft crime known as SIM-swapping. SIM swapping is a type of account takeover fraud that generally targets weaknesses in authentication mechanisms targeting mobile telephones, allowing criminals to take over a victim's telephone and its communications. Cyber criminals will generally change the SIM card associated with a victim's account and/or telephone number with a SIM card the criminal controls. Once the SIM card is changed, the criminal controls the victim's telephone number, which then can be used to reset accounts containing valuable property (such as cryptocurrency accounts) or other valuable information. Many online accounts are secured with authentication features that rely on the user controlling a particular mobile telephone number, so once a victim's telephone number has been taken over by one of the perpetrators, the perpetrators can take over the accounts that they are targeting.

4. Victims are also frequently targeted at their home addresses for "swatting calls." A "swatting call" is a hoax call made to emergency services typically reporting an immediate threat to human life. The goal of the hoaxer is to draw a response from law enforcement—and specifically a SWAT team—to the victim's location. In the most egregious cases, the responsible party reports a crime of violence or an impending crime of violence to have a heavily armed law enforcement team dispatched to apprehend the victim of the call.

5. The discovery in this matter contains sensitive information, including allegations and facts relating to criminal conduct by people other than the defendant who are the subject of other ongoing investigations. The discovery also contains social media account information,

address and location information, and phone numbers. All of this information can be used by members of the defendant's group to commit the crimes described above, and have been used to that end in the past.

6. Although the government has endeavored to redact as much of this information as possible, the remaining information contained within the discovery could lead to the identities of victims and/or witnesses.

7. In order to protect the privacy interests of people who are identified in the discovery materials but who have not been named in any indictment, to protect the integrity of ongoing cases, and to prevent the potential misuse of others' personal and identifying information, the government respectfully requests that the Court enter a protective order limiting the use of the discovery materials provided to the defense to the preparation for trial and use at trial and any sentencing hearings, and further prohibiting the defense from disclosing the discovery materials to third parties except as required to prepare for trial or for use at trial and any sentencing hearings. These reasonable restrictions upon the use and disclosure of the discovery materials also will minimize the risk of prejudicial pretrial publicity to the defendant.

8. The defendant is currently incarcerated at FDC Philadelphia. The government will provide the discovery to the defendant's counsel electronically. The defendant should not at any time be permitted to print, copy, or export the discovery materials or otherwise share or display the material with third parties, nor should copies of the discovery be permitted to remain with the defendant.

9. The government's request will not adversely affect the defendant in his legitimate preparation for trial.  The government proposes no limit to the defendant's access to these documents in the presence of counsel or investigators.  The defendant may extensively review

and discuss every document the government provides.  Counsel may spend as much time as needed with the defendant with these documents.  We propose no limitation on the defendant's use of these documents in the presence of counsel provided they are not copied, disseminated, or otherwise shared with third parties.  Counsel must, however, take such documents with her when meeting with his/her client whether at a place of detention or elsewhere.  Finally, the defendant will be able to discuss these documents with counsel and investigators both in person and over the phone.  There is no limitation on the telephonic disclosure of the information from these documents to the defendant.  The only limitation the government seeks is on the physical possession and dissemination of these documents by the defendant and third parties.

10. Rule 16 of the Federal Rules of Criminal Procedure provides in pertinent part that:  "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

11. The Supreme Court has noted that the courts may use protective orders to restrict the use of materials produced in discovery:

> [T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.

*Alderman v. United States*, 394 U.S. 165, 185 (1969). *Cf. United States v. McDade*, 1994 WL 161243, at *3-5 (E.D. Pa. Apr. 15, 1994) (limiting use of criminal deposition "solely for the preparation and conduct of the proceeding" and prohibiting any further disclosure); *United States v. Smith*, 602 F. Supp. 388, 397-98 (M.D. Pa. 1985) (rejecting press request to unseal bill of particulars containing the names of unindicted coconspirators; "no First Amendment right of access to inspect and copy judicial records and documents that contain information which was produced in pre-trial discovery proceedings").

12. The materials at issue here are discovery materials, including interview reports, which are furnished to defense counsel solely to aid their preparation for trial and sentencing. Some of this information will be subject to public disclosure when it is introduced at trial, in pleadings, or at sentencing. The government has an obligation to present all admissible evidence to prove its case; the defense has an obligation to use all admissible material in zealously contesting the charges; and the public has an unquestioned right of access to trial proceedings. That constellation of interests will erase any remaining privacy right in the admissible evidence. But that is not the state of the matter now. At this point, the discovery materials at issue consist not of trial evidence, but of investigatory materials for which no right of access exists or should be created.

13. Protective measures are also appropriate for the many discovery materials that contain personal identifying information. Pursuant to Rule 16(d)(1), courts routinely tailor protective orders to address the specific concerns about discovery materials that exist in particular cases. Thus, for example, a court in the Southern District of New York granted a protective order that (a) required defense counsel to return or destroy all copies of Jencks material at the conclusion of the case, (b) prohibited defense counsel from disseminating material to anyone other than the defendants and the defense team, and (c) prohibited defendants from possessing in any jail facility any of the materials disclosing or referring to the identity and expected testimony of any witness other than a government agent, except when reviewing such materials in the presence of defense counsel. *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005) (observing that defendants "have no right to extended independent review of [Jencks Act] materials in the privacy of their cells"); *United States v. Rivera*, 153 F. App'x 758 (2d Cir. 2005) (not published) (district court's protective order prohibiting defendant from

retaining Jencks Act material at his detention facility did not deprive defendant of effective assistance of counsel, where defendant was given ample opportunity to review Jencks Act material and to consult his lawyer regarding that material).

14. The cases cited above demonstrate that the Court is empowered to tailor a protective order to address the specific concerns about discovery that exist in a particular case, and here that is to protect individuals whose sensitive information and personal identifying information appear throughout the discovery materials from the harm potentially resulting from the dissemination of this type of information.

15. Counsel for the defendant has authorized the government to state that the defendant has no objection to this motion at this time, and if such an objection arises counsel will address with government counsel and/or the Court.

Wherefore, based on the foregoing, the government respectfully requests that the Court enter a protective order pursuant to Rule 16(d)(1) in the form of the proposed order attached to this motion.

                                Respectfully submitted,

                                JACQUELINE C. ROMERO
                                United States Attorney

                                */s/ Anthony J. Carissimi*
                                ANTHONY J. CARISSIMI
                                Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-cr-288 |
| PATRICK McGOVERN-ALLEN | : | |

ORDER

AND NOW, this ___ day of _____, 2022, upon consideration of the government's unopposed motion for a protective order, it is ORDERED that the motion is GRANTED. The Court finds that good cause exists to enter the protective order pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure. The Court has considered the "specific examples" of harm and "articulated reasoning" as set forth by the government in its motion. *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007). The Court has also considered the public interest in the discovery materials and concludes that, at this stage, no First Amendment or common law right of access has attached to the records. *See id.* at 208-11; *North Jersey Media Group v. United States*, 836 F.3d 421, 434-36 (3d Cir. 2016). On balance, the public's interest in the discovery materials is outweighed by the "clearly defined" and potentially "serious injur[ies]" that would result from disclosure. *See* Fed. R. Crim. P. 16(d)(1); *Wecht*, 484 F.3d at 212.

IT IS FURTHER ORDERED pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure that defense counsel may make such use of the discovery materials only as is necessary to prepare for trial and for use at trial and any sentencing hearings. This order does not prohibit counsel from showing these materials to the defendant and discussing these materials at meetings with the defendant or from reading from or discussing these materials in telephone conversations with the defendant.  This order also does not prohibit counsel from showing these

materials to, providing copies of these materials to, or discussing the contents of the materials with, any defense experts or defense investigators who are a part of defendant's defense team and are actively working on defendant's defense to the charges of the indictment.   However, any expert, investigator, or member of the defense team that is provided access to these materials is bound by the prohibitions of this Order in the same manner as defense counsel and is prohibited from any further copying or dissemination of the materials unless granted permission to do so by subsequent Order of this Court.

        BY THE COURT:

        _____
        HONORABLE GERALD J. PAPPERT
        *Judge, United States District Court*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the Government's Unopposed Motion for a Protective Order Pursuant to Federal Rule of Criminal Procedure 16(d)(1) on the following by electronic filing:

Nancy MacEoin, Esquire

*/s/ Anthony J. Carissimi*
ANTHONY J. CARISSIMI
Assistant United States Attorney