**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 22-288-1** |
| | : | |
| **PATRICK McGOVERN-ALLEN** | : | |

**DEFENDANT'S SENTENCING MEMORANDUM AND
MOTION FOR DOWNWARD VARIANCE**

Patrick McGovern-Allen, by and through counsel, Nancy MacEoin, Assistant Federal Defender, submits this memorandum to aid the Court in imposing a just sentence in this case. Mr. McGovern-Allen stands before this court humbled, ashamed, and embarrassed of his conduct in this case. As he admitted when he pleaded guilty, Mr. McGovern-Allen traveled on two different occasions from New Jersey to Pennsylvania, to engage in very dangerous conduct. This conduct was indefensible and put other people in very serious danger of getting hurt or even killed. Mr. McGovern-Allen engaged in this conduct to fuel his severe drug addiction. In the time he has been in custody, since August 12, 2022, Mr. McGovern-Allen has reflected on the decisions he made which led him to this point. He deeply regrets his conduct and apologizes to the victims. He knows he has to serve a substantial amount of time in federal prison. He intends to use the time he will serve to rehabilitate himself so he will never be in this situation in the future.

**I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Mr. McGovern-Allen was arrested on August 12, 2022, at the residence of a friend in Woodbury, New Jersey. On September 1, 2022, a grand jury returned an indictment, charging him with two counts of stalking in violation of 18 U.S.C. § 2261A. On October 27, 2022, a

grand jury returned a superseding indictment charging Mr. McGovern-Allen with two counts of stalking in violation of 18 U.S.C. § 2261A and § 2261B, and one count of violating 18 U.S.C. §§ 844(h)(1) and 2, which carries a mandatory sentence of 120 months' incarceration to be imposed consecutive to any sentence imposed on the remaining counts. .

On February 9, 2023, Mr. McGovern-Allen pleaded guilty to the superseding indictment. He has accepted responsibility for his conduct, is apologetic to the victims, the Court, and his family. He pleaded guilty fully understanding this Court cannot impose a sentence of less than 10 years' incarceration.

## II.     PATRICK McGOVERN-ALLEN'S PERSONAL HISTORY

Mr. McGovern-Allen was born on July 4, 2001, to young parents who battled substance abuse. At birth, he tested positive for marijuana. While he lived with his mother for approximately the first year of his life, his maternal grandmother intervened due to his mother's drug use and neglect, gaining custody of him. Mr. McGovern-Allen's father has been in and out of prison his entire life. Mr. McGovern-Allen's grandparents provided him with stability and structure. They enrolled him in Catholic school and raised him as their own child. Thanks to their support, Mr. McGovern-Allen has fond memories of family gatherings, and school and church events while growing up. Pictures of Mr. McGovern-Allen as a child and young man at some of these events are attached hereto as Exhibit A. Letters of support from extended family members and close friends are attached as Exhibit B. Mr. McGovern-Allen was especially close to his aunt Nikki, who unfortunately passed away very suddenly when he was ten years' old, which affected him deeply.

Despite his grandparents' loving support, Mr. McGovern-Allen struggled emotionally. He was prone to emotional outbursts both at home and school. He went for long periods without

any contact from his biological parents, leaving him feeling anger and sadness due to what he viewed as his parents abandoning him. He often felt that his parents chose drugs over raising and loving him. As a teenager, he underwent several mental health evaluations and in 2018, he was diagnosed with Post-Traumatic Stress Disorder. That same year, he was expelled from Catholic School. He graduated from Egg Harbor Township High School in 2019. While he periodically worked in restaurants and retail, he never maintained employment consistently enough to support himself.

Unfortunately, from a young age, Mr. McGovern-Allen succumbed to the vices of his biological parents when he began experimenting with controlled substances. He first smoked marijuana at age 14, and by age 16, he was using Xanax, Percocet, and Adderall. PSR ¶ 64. He later experimented with LSD. He abused drugs throughout his teenage years and until the time of his arrest. His grandparents pleaded with him to get help and enrolled him into outpatient treatment when he was 18. By his own admission, Mr. McGovern-Allen did not apply himself to the program and as a result, he did not benefit from the treatment. PSR ¶ 65.

When Mr. McGovern-Allen's drug use became too much for his grandparents to tolerate, they attempted to get him into inpatient drug treatment. Unfortunately, his mother, whom he had recently tried to reconnect with, talked him out of drug treatment. With no other options, his grandparents informed him that he could not live with them unless he was in treatment. This was a difficult decision to make but felt it was their only option. Mr. McGovern-Allen left the home and moved in with his mother, who was also actively using drugs. He described an incident in which his mother accused him of taking her drugs and physically attacked him. He later moved in with a friend. It was during this time of instability that Mr. McGovern-Allen engaged in the criminal conduct for which he must now be sentenced. When he committed these crimes, Mr.

McGovern-Allen was heavily using Percocet and marijuana. He committed these crimes for the sole purpose of getting money to buy drugs.

Defense counsel hired Dr. Clarence Watson to prepare and evaluation of Mr. McGovern-Allen to aid the Court in sentencing him. This report, as well as Dr. Watson's current *curriculum vitae*, are attached as Exhibit C. Dr. Watson interviewed Mr. McGovern-Allen, his mother, and reviewed discovery in this case as well as past psychological evaluations. He concluded, to a reasonable degree of psychological certainty, that Mr. McGovern-Allen suffers from cannabis and opioid use disorder and unspecified anxiety disorder and noted a history of posttraumatic stress disorder and benzodiazepine use disorder. Dr. Watson's report, p. 14. He opines that

> [i]t is essential that Mr. McGovern-Allen receive substance abuse counseling to improve his insight regarding the negative impact that substance abuse has had on his life and to assist him in developing healthier coping strategies to address his emotional stressors. In addition, psychological counseling aimed at addressing residual emotional issues related to his traumatic childhood is recommended.

*Id*. p. 16. Mr. McGovern-Allen knows and appreciates that he must actively engage in both drug and mental health treatment moving forward. He is looking forward to beginning his recovery while serving his sentence and plans to participate in the Residential Drug Abuse Program (RDAP) and whatever drug and mental health counseling is available at his designated facility.

### III.     THE SENTENCING GUIDELINE RANGE

As indicated in PSR ¶ 44, the adjusted offense level is 19. With three criminal history points, the criminal history category is II. PSR ¶ 49. This yields a guideline range of 33 to 41 months. However, application of the mandatory minimum sentence of 120 months' incarceration pursuant to 18 U.S.C. § 844(h), the advisory guideline range is 153 to 161 months. PSR ¶ 74. However, defense counsel respectfully submits that the nature of Mr. McGovern-

4

Allen's prior convictions must be considered when determining the appropriate guideline range. In fact, the Third Circuit has long recognized criminal history as one of the most flexible aspects of the guidelines and downward departures for overstated criminal histories are *encouraged* departures. *See United States v. Shoupe*, 988 F.2d 440, 444 (3d Cir. 1993) (*Shoupe II*). Such authority to grant the departure provided for in U.S.S.G. § 4A1.3(b)(1) stems from the vagaries of individual criminal backgrounds and the imprecision in calculating such backgrounds.

The United States Probation Officer calculated Mr. McGovern-Allen's criminal history category to be II, based on a total of three criminal history points. PSR ¶¶ 48, 49. Mr. McGovern-Allen submits that a criminal history category of II over represents his criminal history as two of those criminal history points derive from possession of marijuana convictions. PSR ¶¶ 45, 47. Additionally, two of his criminal history points come from juvenile adjudications, which count towards the criminal history category solely due to Mr. McGovern-Allen's young age. PSR ¶¶ 45, 46. It is noteworthy that all three convictions which constitute the three criminal history points occurred within a period of roughly eight months between December 2018 and August 2019 when Mr. McGovern-Allen was a senior in high school.

Additionally, it should be noted again that *all* of the criminal conduct contributing to Mr. McGovern-Allen's criminal history score occurred before his prefrontal cortex was fully developed, which demonstrates that when he committed those offenses, he was acting without a full capacity to control his impulses and understand the consequences of actions, an argument which is set forth in more detail in the next section. For these reasons, Mr. McGovern-Allen's criminal history score is simply not indicative of his likelihood of recidivism. As a result, Mr. McGovern-Allen respectfully requests that the Court depart downward pursuant to U.S.S.G. §

4A1.3(b)(1) or, in the alternative, grant a downward variance based on Mr. McGovern-Allen's personal history and characteristics.

### IV.     A SENTENCE OF 120 MONTHS AND ONE DAY IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO MEET THE 18 U.S.C. § 3553(a) FACTORS

The nature of the offense is undoubtedly serious. Mr. McGovern-Allen's conduct placed others in danger of serious bodily injury and even death. And not just the victims, but to the firefighters who responded to the house in Abington Township. And indeed, Congress has acknowledged the very serious nature of crimes committed with fire by taking discretion away from sentencing judges and *requiring* mandatory minimum sentences be applied on counts charging 18 U.S.C. § 844(h)(1) to run *consecutive* to other counts of the indictment. This statutory mandate requires this Court impose a sentence of 120 months on Count Two, regardless of the Court's consideration of any other factors at sentencing. The defense submits that this mandatory minimum sentence sufficiently addresses the 18 U.S.C. § 3553(a)(2)(A) factors of and reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for this offense.

What Congress cannot do, however, is mandate how this Court considers of the remaining 18 U.S.C. § 3553(a) factors. Consideration of each of these other factors mitigate in favor of a sentence below the recommended guideline range. The defense submits that a sentence of 120 months' plus one day incarceration is sufficient, but not greater than necessary, to meet the other statutory objectives. Such a sentence will deter Mr. McGovern-Allen from engaging in criminal conduct in the future, as well as protect the community from any future conduct. Mr. McGovern-Allen's committed these offenses for the sole purpose of feeding his drug addiction. He now understands that he needs intensive drug and mental health treatment to remain in the community and become a productive citizen. Drug addiction runs in his family.

As Dr. Watson noted, "…Mr. McGovern-Allen's family history of significant substance addiction indicates that he carries a heavy genetic vulnerability for substance use disorders." Dr. Watson's Report, p. 16. Mr. McGovern-Allen understands this and plans to engage in intense drug treatment while serving this sentence.[1] That treatment, along with mental health counseling, will continue when he is released. By requiring both drug and mental health treatment as a condition of his supervised release, this will prevent future criminal conduct. Should Mr. McGovern-Allen stray from this required treatment, he will be back before this Court and possibly reincarcerated. He is very motivated to stay on the proper path to be able to move forward with his life and put this chapter behind him.

As alluded to *supra*, consideration must be given to Mr. McGovern-Allen's young age at the time of this offense and the other offenses he committed – the last of which was on January 2, 2022, when Mr. McGovern-Allen was just 20 years old. Scientific research regarding adolescent brain development shows that the brain continues to mature and develop into one's mid-twenties. *See* Coalition for Juvenile Justice, *What are the Implications of Adolescent Brain Development in Juvenile Justice*, (2006) at 4, 18.[2] Functional magnetic resonance imaging (fMRI) shows that the prefrontal cortex of the brain is the last area of the brain to mature. *CJJ report*, at 7. This area of the brain governs reasoning, advanced thought, and impulse control.

---

[1] Defense counsel will be requesting that this Court recommend in the Judgment and Commitment Order that the Bureau of Prisons place Mr. McGovern-Allen into the Residential Drug Abuse Program ("RDAP"). A description of the program can be found at 28 CFR § 550.53.

[2] This report is available at http://www.juvjustice.org/media/resources/resource_138.pdf (hereinafter "*CJJ report*"); *see also* Paul Thompson, *Time-Lapse Imaging Tracks Brain Maturation from ages 5 to 20*, National Institute of Mental Health and the University of California, Los Angeles (May 2004); Rebecca L. McNamee, *An Overview of the Science of Brain Development*, University of Pittsburgh (May 2006).

7

*Id*. fMRI shows that the prefrontal cortex continues to mature into a person's early to mid-twenties. *Id.* Emotional and physical trauma during childhood, such as fetal drug exposure or abuse, may inhibit or delay certain features of brain development and maturation. *Id.* at 8. Culpability or blameworthiness can be defined by how well a person understands the likely ramifications of one's own actions and the degree of control one has to counteract impulses and peer pressure. The MacArthur Foundation Research Network on Adolescent Development and Juvenile Justice concludes that young offenders are too susceptible to outside influences and vulnerable to their own developmental weaknesses to be considered as blameworthy or culpable as adults. *Id.* at 12.

The United States Supreme Court, in holding that sentences of death and life without parole for non-homicide offenses violate the Eighth Amendment, has expressly recognized that younger individuals are less culpable than adults. *See Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 130 S. Ct. 2011 (2010). In *Roper*, the Supreme Court explained that juvenile offenders possess a "lack of maturity and an underdeveloped sense of responsibility," they are "more vulnerable or susceptible to negative influences and outside pressures," and their "character[s] are not as well formed as that of an adult." *Roper*, 543 U.S. at 569-70 (citations omitted). Subsequently, the Supreme Court reiterated these widely-accepted concepts in *Graham*, noting that "no recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles." *Graham*, 130 S. Ct. at 2026. The Court specifically stated that "[a] juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.'" *Id*. (quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988)); *see also Gall*, 552 U.S. at 58 (holding that it was reasonable for the district court to

consider the defendant's immaturity at the time of his offense as a mitigating factor at sentencing).

In 2012, the Supreme Court extended this reasoning to all juveniles, regardless of the crime they committed, when it held that sentencing a juvenile to life without parole violates the Eighth Amendment. *Miller v. Alabama*, 567 U.S. 460 (2012).

> Of special pertinence here, we insisted in these rulings that a sentencer have the ability to consider the "mitigating qualities of youth." *Johnson v. Texas*, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993). Everything we said in *Roper* and *Graham* about that stage of life also appears in these decisions. As we observed, "youth is more than a chronological fact." *Eddings*, 455 U.S., at 115, 102 S. Ct. 869, 71 L. Ed. 2d 1. It is a time of immaturity, irresponsibility, "impetuousness[,] and recklessness." *Johnson*, 509 U.S., at 368, 113 S. Ct. 2658, 125 L. Ed. 2d 290. It is a moment and "condition of life when a person may be most susceptible to influence and to psychological damage." *Eddings*, 455 U.S., at 115, 102 S. Ct. 869, 71 L. Ed. 2d 1. And its "signature qualities" are all "transient." *Johnson*, 509 U.S., at 368, 113 S. Ct. 2658, 125 L. Ed. 2d 290.

*Id*. at 476. While Mr. McGovern-Allen was not a juvenile when he was arrested in this case, the Supreme Court's reasoning is especially persuasive and equally pertinent in his case in light of the scientific research indicating the parts of the brain which govern reasoning, advanced thought, and impulse control are not fully developed until one's mid-twenties. Mr. McGovern-Allen 20 years old when he committed these offenses. At the time of all of these incidents, Mr. McGovern-Allen's prefrontal cortex, which governs impulse control and the ability to understand consequences of actions, had not fully developed. He was focused on one thing when he committed these offenses: getting money to fuel his drug addiction. Such shortsighted thinking is consistent with a brain which is still developing.

Mr. McGovern-Allen's chaotic and disruptive childhood, combined with his long history of mental health problems, it is safe to say that Mr. McGovern-Allen's late teenage years were indeed a time "immaturity, irresponsibility, 'impetuousness[,] and recklessness'" and a

9

"condition of life when a person may be most susceptible to influence and to psychological damage." *Miller,* 567 U.S. at 476. His drug abuse during the formative teenage years contributed to his lack of judgment. As Dr. Watson noted,

> Mr. McGovern-Allen's addiction to substances escalated during the critical developmental life stage of adolescence. Consequently, Mr. McGovern-Allen's drug abuse hampered his normal development of healthy and positive coping strategies to deal with life stressors, significantly impaired his academic, social, and behavioral functioning, and interfered with normal mood regulation. Further, the severity of Mr. McGovern-Allen's addiction to substances cannot be overstated. In addition to severely impairing his ability to function in academic and occupational settings, his ongoing substance addiction became a major source of conflict that led to the deterioration of his most consistent and functional interpersonal relationships - his grandparents - resulting in his homelessness, while unemployed.

Dr. Watson's Report, p. 16. Mr. McGovern-Allen's judgment during his criminal offenses was further impaired by his drug use. There is no excuse or justification for the crime committed in this case. However, due to his youth and level of brain development at the time of this offense and his documented substance abuse issues, Mr. McGovern-Allen can be considered less culpable than an offender who was fully mature and had sound judgment at the time of the offense.

Mr. McGovern-Allen's history and characteristics, including a traumatic childhood, history of mental health diagnoses, drug addiction, and young age at the time of this offense support a sentence below the recommended sentencing guideline range. A sentence of 120 months and one day imprisonment will provide Mr. McGovern-Allen with needed educational and vocational training, as well as mental health and substance abuse treatment. As such, a sentence above that amount is greater than necessary to achieve this objective. Mr. McGovern-Allen concedes that he requires ongoing mental health and substance abuse treatment. Such

treatment can be provided while he serves a sentence of 120 months and one day. And can continue through outpatient treatment once he is released.

Imposing a sentence of 120 months and one day will result in Mr. McGovern-Allen being released, at a minimum, in his early thirties. At that age, Mr. McGovern-Allen will be outside the "transient" window in which the brain is still developing. He will have several years to start treatment while serving his sentence, find the right medication, and learn the skills he needs to successfully return to the community. Imposing a sentence longer than 120 months and a day is greater than necessary to achieve this objective.

## V.     CONCLUSION

For all the reasons cited herein, as well as any which may become apparent to the Court at the sentencing hearing, the defense respectfully requests the Court impose a sentence of 120 months and one day incarceration in this case.

Respectfully submitted,

/s/ Nancy MacEoin
NANCY MacEOIN
Assistant Federal Defender

## **CERTIFICATE OF SERVICE**

    I, Nancy MacEoin, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I filed the attached Defendant's Sentencing Memorandum and Motion for Downward Variance via the Court's Electronic Filing (ECF) system, which sent notification to Anthony J. Carissimi, Assistant United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106, via his email address Anthony.Carissimi@usdoj.gov.

                                                /s/ Nancy MacEoin
                                                NANCY MacEOIN
                                                Assistant Federal Defender

DATE:        October 12, 2023